UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WANETTA PATTERSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:22-cv-00299 ) Judge Trauger |
| WAYNE HALFWAY HOUSE, LLC, and STANDING TALL MUSIC CITY, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff Wanetta Patterson brings a third amended complaint ("complaint") against defendants Wayne Halfway House, LLC, ("Wayne") and Standing Tall Music City ("STMC") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.[1] (Doc. No. 16.) The court granted the plaintiff pauper status, and the complaint is now before the court for initial review. The court must review and dismiss any in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

**I.  Legal Standard**

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383

---

[1] It is not entirely clear whether the plaintiff intends to sue STMC as her employer or her place of employment. The court recognizes that the plaintiff has had some difficulty in formulating the complaint in this matter. Under the rule of liberal construction, therefore, the court assumes for purposes of initial review that the plaintiff intends to sue both defendants as her employer.

(6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Brown v. Mastauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading."). In reviewing the complaint, the court applies the standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure, *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010), by viewing the complaint in the light most favorable to the plaintiff and taking all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court then considers whether the factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept unwarranted factual inferences, *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), or credit "legal conclusions masquerading as factual allegations." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

II.     **Factual Allegations**

The complaint alleges that the plaintiff, an African-American woman, was employed by Wayne at STMC. (Doc. No. 16 at 2-3.) In November 2019, white trainer Elizabeth McCown began calling African-American clients "monkeys" in front of the plaintiff. *Id*. at 7. The plaintiff complained to supervisors, but they ignored her. *Id*. In December 2019, the plaintiff contacted Wayne to complain of harassment from employees Leah Sorenson and Erika Kemble. *Id*. In response, supervisors reprimanded the plaintiff. *Id*. In January 2020, white employee Brandy

2

Gaskins refused to accept training from the plaintiff. *Id*. The plaintiff complained to Wayne again. *Id*. Eventually, Gaskins attended the plaintiff's training but was "aggressively disrespectful." *Id*. The plaintiff complained to a supervisor, but she was ignored. *Id*. From December 2019 to February 2020, the plaintiff attempted to address violations of state policies at STMC. *Id*. In response, Kemble and human resources director Alan White harassed the plaintiff. Management eventually told the plaintiff that Kemble, who is white, was a "better look for representing the company" and gave the plaintiff's work to Kemble. *Id*.

In March 2020, new employee Alberto Mendoza began giving preferential treatment to white clients, mistreating African-American clients, and acting disrespectful towards the plaintiff. *Id*. at 7-8. Mendoza and Gaskins became more aggressive with the plaintiff and other African-American staff. *Id*. Although the plaintiff reported this information to Wayne, and African-American clients complained that Mendoza and Gaskins were threatening them, Wayne took no action. *Id*. at 8. Soon after, Mendoza and Gaskins began manufacturing invalid reasons for staff terminations. *Id*. Wayne then held a meeting at which Mendoza and Larry Morrisette announced that "the company will be changing the culture." *Id*. The predominantly African-American staff asked for an explanation, but none was provided. *Id*. Immediately after the meeting, Wayne began replacing African-American staff. *Id*. In April 2020, the plaintiff was terminated and replaced with Gaskins. When the plaintiff complained to Wayne, she was ignored by several supervisors and "laughed at" by human resources director White. *Id*. The plaintiff received a telephone call from an employee warning her that she was terminated because of her race and that Wayne was in the process of making an "all-white" facility. *Id*. Thereafter, McCown posted a confederate flag and the statement "these are not my monkeys" on the plaintiff's Facebook page. *Id*.

**III. Analysis**

3

Title VII is a key part of "the federal policy of prohibiting wrongful discrimination in the [n]ation's workplaces." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). The statute that makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful to retaliate against employees for engaging in protected conduct – that is, opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a).

Here, the plaintiff alleges both discrimination and retaliation under Title VII. (Doc. No. 16 at 4.) To establish discrimination under Title VII, a plaintiff must show that she (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position in question; and (4) was treated differently from similarly situated individuals outside of her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). However, a plaintiff need not establish all the elements of a Title VII claim at this stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Rather, a plaintiff need only set forth a short and plain statement of her claims and allege facts sufficient to plausibly suggest an entitlement to relief. *Williams*, 631 F.3d at 383; *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012) (explaining that as long as the complaint "provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)"). For a Title VII retaliation claim, a plaintiff must plausibly allege that: (1) she engaged in protected conduct under Title VII; (2) her employer had knowledge of the protected activity; (3) the employer thereafter took an employment action adverse to her; and (4) there was

4

a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Liberally construing the complaint, as the court must at this stage, the plaintiff plausibly alleges that the defendants had a practice of discriminating against African-American employees; the defendants treated the plaintiff, a qualified African-American woman, differently from white employees (through unequal conditions, harassment, and disparate work assignments); and the defendants terminated the plaintiff because she was African-American and replaced her with a white employee. The complaint also plausibly alleges that the plaintiff engaged in protected activity under Title VII (i.e., formally complaining to the defendants concerning the discrimination alleged here); the defendants were aware of the plaintiff's complaints; and that the defendants took adverse employment actions (reduced work duties and termination) that were causally connected to the plaintiff's complaints of discrimination. Accordingly, at this preliminary stage of the litigation, the plaintiff has stated colorable Title VII discrimination and retaliation claims.

IV. **Conclusion**

For these reasons, the court concludes that the plaintiff has stated non-frivolous claims against the defendants for discrimination based on race or color and retaliation under Title VII. All other claims are **DISMISSED**. The court's determination that the complaint states colorable claims for purposes of this initial screening does not preclude the court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude the defendants from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

The court will direct the U.S. Marshals Service to serve the Third Amended Complaint (Doc. No. 16) on Wayne Halfway House, LLC, and Standing Tall Music City at no cost to the plaintiff. However, in order for the U.S. Marshals Service to serve the defendants, the plaintiff

must complete and return two forms: "Process Receipt and Return" (AO 285) and "Summons in a Civil Action" (AO 440). These forms are together referred to as a "service packet." The Clerk is **DIRECTED** to send the plaintiff two service packets. The plaintiff **MUST** complete one service packet for each of Wayne Halfway House, LLC, and Standing Tall Music City, and then return the two completed service packets to the Clerk's Office within **21 DAYS** of the date this order is entered on the docket. Upon return of the completed service packets, **PROCESS SHALL ISSUE**. The plaintiff is warned that failure to return the completed service packets within the required time period could jeopardize her prosecution of this action.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72 of the Federal Rules of Civil Procedure and the Local Rules of Court. The plaintiff is cautioned that she must keep the court informed of her current address at all times or face dismissal for want of prosecution. Fed. R. Civ. P. 41(b); Local Rule 41.01(b). Additional resources for pro se litigants, including forms, handbooks, and information sheets, are available on the Court's website. *See* https://www.tnmd.uscourts.gov/representing-yourself-federal-court.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge